# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL JOSEPH LEGRAND, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-15-290-RAW-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Michael Joseph LeGrand requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on June 9, 1972, and was forty-one years old at the time of the administrative hearing (Tr. 96). He completed the twelfth grade and has worked as a radial arm saw operator (Tr. 89). The claimant alleges that he has been unable to work since January 27, 2012, due to his weight, and problems with his lower back and left knee (Tr. 203).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on August 20, 2012. His application was denied. ALJ Lantz McClain conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated April 25, 2014 (Tr. 81-90). The Appeals Council denied review of that opinion, so the ALJ's written opinion is the final decision of the Commissioner on appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), *i. e.*, he could lift/carry ten pounds occasionally and frequently, stand/walk at least two hours in an eight-hour workday, and sit at least six hours in an eight-hour workday, with the following additional limitations of only

occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, or crawling (Tr. 84). The ALJ concluded that although the claimant could not return to his past relevant work, there was other work that the claimant could perform, *i. e.*, circuit board assembler, and semi-conductor bonder (Tr. 89).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly account for evidence related to his severe impairments of obesity and sleep apnea, (ii) failing to properly account for an amputated finger with regard to manipulative limitations, and (iii) failing in formulating the RFC and questioning the vocational expert as to the special accommodations needed for the claimant's massive obesity. The undersigned Magistrate Judge finds the claimant's first contention persuasive.

The ALJ determined that the claimant had the severe impairments of morbid obesity, back pain, hypertension, diabetes mellitus, osteoarthritis of the knee, and treated sleep apnea (Tr. 83). The medical evidence reveals that the claimant's weight prior to his alleged onset date was in the range of 383-407 pounds (Tr. 264-265, 268). On January 4, 2012, his weight was 411 pounds, and after the alleged onset date, it largely ranged from 441-455 pounds (Tr. 318, 323, 354, 372, 376, 380, 384, 388, 401). Additionally, records submitted to the Appeals Council indicate that the claimant was hospitalized at Hillcrest Medical Center with acute hypoxic hypercapnic respiratory failure in January 2015, and a recorded weight of approximately 501 pounds (Tr. 13).

On October 29, 2012, a CPAP report indicated that the claimant had "very severe obstructive sleep apnea hypopnea and sleep disordered breathing syndrome" (Tr. 369).

The interpreting physician recommended maximum attempted bi-level therapy, and stated that his obesity and probable poor sleep hygiene exacerbated the sleep ailment (Tr. 369). She recommended bi-level therapy, evaluation of the nose and throat, drastic weight loss including gastric bypass if indicated, sleeping with the head elevated, sleep hygiene, avoiding sedative/narcotic medications prior to sleep, and continued review and management (Tr. 370).

On January 7, 2013, Andrew M. Patchett, D.O., conducted a history and physical examination of the claimant (Tr. 343). He indicated that the claimant weighed 400 pounds,[2] that his heel/toe walking was weak bilaterally, that he had a limited range of motion of the spine, and that his gait was safe and stable with no use of assistive devices (Tr. 344, 346, 349). He assessed the claimant with chronic low back pain, status post motor vehicle accident; morbid obesity; hypertension; and diabetes mellitus, type II (Tr. 345).

On February 26, 2013, state reviewing physician Katherine Scheirman, M.D. found the claimant could perform sedentary work but only occasionally climb ramps/stairs, balance, stoop, knell, crouch, or crawl, and never climb ladders/ropes/scaffolds (Tr. 119). She briefly summarized much of the medical evidence and found the claimant "mostly credible," but seemed to believe the claimant had lost forty pounds due to Dr. Patchett's consultative examination because she stated that the claimant had reported gaining weight but "evidence shows had lost 40# since 10/12

---

[2] In light of evidence from his treating physician dated January 25, 2013 (eighteen days later), indicating a weigh of 446 pounds (Tr. 362), this is likely not an accurate weight but possibly an estimate (Tr. 344).

exam" (Tr. 120). She then stated that the claimant's RFC was limited by the claimant's severe obesity and chronic back pain, and was "mostly consistent" with his daily activities (Tr. 120). On June 27, 2013, Dr. James Metcalf, M.D., reviewed her assessment and affirmed it, copying verbatim her summary of the evidence (Tr. 131).

At the administrative hearing, the claimant testified that he gets short of breath when he walks, mentioned he was relieved his parking spot had been close to the elevator for the hearing, and described his sleep apnea causing constant daytime sleepiness (Tr. 99-101, 104). Additionally, he testified that he once fell asleep standing up at his last job (Tr. 99-100). He testified he had been over 400 pounds since around 2011 (Tr. 97), and that he has to sit on a chair in the kitchen to help with the cooking Tr. (106).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as much of the evidence in the record. He found the claimant's statements "not entirely credible" (Tr. 86). In assessing the effect of the claimant's obesity, the ALJ stated, "The claimant is morbidly obese, but this is a problem that has persisted his whole life. The claimant should still be able to perform sedentary work. The claimant was working until he was laid off because of a slow down at his job. The claimant testified that his sleepiness from sleep apnea is a problem, but he was able to stay awake adequately to work until he was laid off" (Tr. 88).

The claimant contends that the ALJ: (i) failed to recognize evidence showing that the claimant's obesity had worsened considerably since the alleged onset date, improperly dismissing it as a problem that had occurred his entire life, which ignores the

Commissioner's own policy, and (ii) failed to recognize the effects of the claimant's worsening sleep apnea. The undersigned Magistrate Judge agrees.

Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The Listing of Impairments with regard to the musculoskeletal system references obesity and explains that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." The ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's residual functional capacity. 20 C.F.R. pt. 404, subpt. P, app. 1, Part A, 1.00 Musculoskeletal System.

In this case, the ALJ found at step two that the claimant suffered from the severe impairment of, *inter alia*, morbid obesity, and found that his obesity did not meet a Listing at step three. The claimant does not challenge these findings (Tr. 83-84). The ALJ's analysis of the claimant's obesity at step four, however, falls below the appropriate standards. The uncontested evidence, which the state reviewing physicians found credible (and whose opinions the ALJ gave great weight), indicated that the claimant could not walk further than seventy-five yards. Nevertheless, the ALJ indicated that the claimant stand/walk up "at least" two hours in an eight-hour workday. Rather than evaluate the evidence for the claimant's limitations, the ALJ simply concluded that, because the claimant had been obese his whole life, he was therefore capable of sedentary work. This ignores evidence of the claimant's worsening condition. Furthermore, the ALJ failed to connect the claimant's obesity to his other impairments for an assessment

of additional or cumulative effects. Indeed, given the impact that obesity and poorly controlled diabetes can have on the cardiovascular and respiratory systems, the ALJ erred in failing to consider these impairments together. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-742 (10th Cir. 2007), *citing* Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *1, *5-*6, *7 (Sept. 12, 2002). The ALJ made no mention at all of the October 2012 CPAP report regarding the severity and effects of the claimant's obstructive sleep apnea (which was notably exacerbated by his obesity). In doing so, the ALJ ignores the very manner in which obesity would impact an individual's RFC, *i. e.*, that claimant's obesity is contributing to the pain and fatigue complained of by the claimant. Pain and fatigue are specifically listed in SSR 02-1p as symptoms of obesity. SSR 02-1p, 2002 WL 34686281, at * 4. Further, SSR 02-1p specifically states that "[i]n cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity" and reiterates that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity" SSR 02-1p, 2002 WL 34686281, at *6. The ALJ, however, wholly failed to analyze the claimant's obesity in conjunction with his multiple other severe impairments and instead seems to have considered the claimant's obesity without consideration of the impact of obesity on the claimant's other severe impairments. *See* SSR 02-1p, 2002 WL 3468281, at *6 ("The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.").

Additionally, the ALJ devoted much attention to a report that the claimant had been noncompliant with his diabetes medications for one month in finding him not credible for failing to follow treatment (Tr. 86-87). This is improper as well. "We will rarely use 'failure to follow prescribed treatment' for obesity to deny or cease benefits. . . . [and] we will not find that an individual has failed to follow prescribed treatment for obesity when the prescribed treatment is surgery." SSR 02-1p, 2002 WL 34686281, at *9, 10.

The ALJ thus failed to properly assess the claimant's RFC at step four. Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

As set forth above, the undersigned Magistrate Judge PROPOSES that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the undersigned RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**